**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**SAN ANGELO DIVISION**

| | |
|---|---|
| **MARGARET L. THOMAS,** § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | Civil Action No. 6:07-CV-053-C |
| § | ECF |
| § | |
| **MICHAEL J. ASTRUE,** § | |
| **Commissioner of Social Security,** § | |
| § | Referred to United States |
| Defendant. § | Magistrate Judge |

**REPORT AND RECOMMENDATION**

**THIS CASE** is before the court upon Plaintiff's complaint filed December 26, 2007, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for disability insurance benefits and for supplemental security income ("SSI") benefits under Title II and Title XVI of the Social Security Act. On December 27, 2007, the United States district judge, pursuant to 28 U.S.C. § 636(b), reassigned this case to the United States magistrate judge for all further proceedings. Plaintiff filed a brief in support of her complaint on July 15, 2008 ("Pl. Brief"), Defendant filed a brief on August 14, 2008, and Plaintiff filed her reply on August 29, 2008. This court has considered the pleadings, the briefs, and the administrative record and recommends that the United States district judge reverse the Commissioner's decision and remand this case for further administrative proceedings as described herein.

## I. STATEMENT OF THE CASE

Plaintiff filed applications for disability insurance benefits and for supplemental security income benefits on May 3, 2004, alleging disability beginning May 25, 2003. Tr. 16, 95-98. Plaintiff's applications were denied initially and upon reconsideration. Tr. 16, 34-38, 41-47. Plaintiff filed a Request for Hearing by Administrative Law Judge on December 17, 2004, and this case came for hearing before the Administrative Law Judge ("ALJ") on January 18, 2007. Tr. 16, 32, 316-34. Plaintiff, represented by an attorney, testified in her own behalf. Tr. 319-33. The ALJ issued a decision unfavorable to Plaintiff on April 19, 2007. Tr. 13-25.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that: Plaintiff met the disability insured status requirements on May 25, 2003, through June 30, 2008, and Plaintiff had not engaged in substantial gainful activity at any time since May 25, 2003. Tr. 17. Plaintiff has "severe" impairments, including a cervical strain, lumbar strain, osteoarthritis of her lumbar spine, degenerative disc disease and spondylosis of her cervical spine, a history of right-sided costochondritis, a history of an irregular heart beat, hypertension, gastroesphageal reflux disease, chronic open angle glaucoma of her bilateral eyes, a cataract of her left eye, reduced visual acuity, significantly reduced visual fields, and actinic keratosis. *Id.* Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id.* Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent

with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. *Id*.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible because the evidence did not indicate that Plaintiff had manifested indicia of the severe, disabling pain and limitations she alleged. Tr. 22. The ALJ found that Plaintiff retained the RFC to perform, on a continuing and sustained basis, the requirements of medium work activity, limited to jobs that do not require keen vision, peripheral vision, driving, or working at unprotected heights or around dangerous moving machinery. Tr. 18. The ALJ found that Plaintiff could return to her past relevant work as a certified nurse's assistant and that this work does not require the performance of work-related activities precluded by her RFC. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 24-25.

Plaintiff submitted a Request for Review of Hearing Decision/Order on May 14, 2007. Tr. 8-12. The Appeals Council denied Plaintiff's request and issued its opinion on September 27, 2007, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 5-7. The ALJ's decision, therefore, became the final decision of the Commissioner.

On December 26, 2007, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the

Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case the ALJ found at step 4 that Plaintiff was not disabled because she was able to return to her past relevant work as a certified nurse's assistant. Tr. 24.

### III.  DISCUSSION

Plaintiff claims that the ALJ erred in making his decision in two respects. First, she argues that the ALJ erred in finding that her severe visual impairments did not meet nor were they medically equivalent in severity to Sections 2.02 or 2.03 of the Listing of Impairments. Second, she argues that the ALJ erred in finding that she could return to her past relevant work as a nurse's

assistant. The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

**A. Whether the ALJ erred at step 3 in finding that Plaintiff's visual impairments did not meet or equal in severity Section 2.02 or 2.03 of the Listing of Impairments**.

Plaintiff argues that the ALJ erred in finding that her visual impairments were not medically equivalent to any section of the Listing of Impairments. She argues that the ALJ erred because this finding was not supported by the opinion of any physician.

In order to obtain a determination of disabled under the Listing of Impairments, an applicant must show that his impairments meet or equal one of the listings in Appendix 1 of 20 C.F.R. Part 404. The ALJ determines at step 3 of the 5-step sequential analysis whether a claimant's severe impairments meet or equal one or more of the Listings. At step 3 the burden of proof rests with a claimant. Ultimately, the claimant has the burden of proving that her impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 404.1520(d); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). That burden is to provide and identify medical signs and laboratory findings that support *all* criteria for a step 3 impairment determination. *McCuller v. Barnhart,* 72 Fed.Appx. 155, 158 (5th Cir. 2003); *Selders,* 914 F.2d at 619; 20 C.F.R. § 404.1526(a). If a claimant fails to provide and identify medical signs and laboratory findings that support all criteria of a Listing, the court must conclude that substantial evidence supports the ALJ's finding that the required impairments for any Listing are not present. *Selders,* 914 F.2d at 620. To meet a listed impairment, the claimant's medical findings (i.e., symptoms, signs, and laboratory findings) must match those described in the listing for that impairment. 20 C.F.R. §§ 404.1525(d), 404.1528; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Pursuant to Social Security Ruling 96-5p (July 2, 1996) ("SSR 96-5p") certain issues are "not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings that are dispositive of a case," including "[w]hether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings." SSR 96-5p. The finding of equivalence "is an issue reserved to the Commissioner." *Id.*

Plaintiff argues that a finding on medical equivalence must "always be based on medical evidence only," citing 20 C.F.R. § 404.1526(a)-(b). Pl. Brief at 8. However, as SSR 96-5p notes, although "equivalence is addressed as a 'decision . . . on medical evidence only' because this finding does not consider the vocation factors of age, education, and work experience," this finding also "requires a judgment that the medical findings equal a level of severity" as set forth in 20 C.F.R. §§ 404.1545, 404.1546, 416.945 and 416.946, and, therefore, "it is an issue reserved to the Commissioner." *Id.* Social Security Ruling 96-6p (July 2, 1996) ("SSR 96-6p") explains with regard to the finding of medical equivalence to an impairment in the Listing of Impairments:

> The administrative law judge or Appeals Council is responsible for deciding the ultimate legal question whether a listing is met or equaled. As trier of the facts, an administrative law judge or the Appeals Council is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments. However, longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.

While Defendant correctly notes that the finding of medical equivalence is ultimately an issue reserved to the Commissioner, SSR 96-6p makes clear that the judgment of a physician or a psychologist on the issue of equivalence should be received into the record.

In most instances, the signature of a State agency medical consultant "SAMC" indicates that the question of medical equivalence has been considered by a physician or psychologist. In this case,

however, the issue of Plaintiff's visual impairments did not arise until after the SAMCs had reviewed Plaintiff's applications and the medical evidence submitted in support of such applications. Plaintiff was not examined by an ophthalmologist until April 2006, approximately two years after review by the SAMCs.

Dr. John L. Barnes, Plaintiff's ophthalmologist, indicated that Plaintiff was disabled because of her visual impairments. Tr. 255. Dr. Barnes noted that Plaintiff's glaucoma had caused extensive field of vision loss and that Plaintiff's vision was corrected to 20/30 in her right eye and 20/100 in her left eye. Tr. 256. The ALJ obtained a consultative examination by Dr. Douglas J. Kappelmann. Tr. 257-263. Dr. Kappelman indicated that the visual field testing reported by Plaintiff's ophthalmologist was so "constricted that it is somewhat artifactual," opined that Plaintiff's "visual field is probably larger than what is determined on the test," and further noted that with the noted level of constriction, a patient would be unable to ambulate. Tr. 257. Dr. Kappelman opined that Plaintiff should not drive, work in jobs that use tools, or work at heights. *Id*.

SSR 96-6p provides that the ALJ or Appeal Council must obtain an updated medical opinion from a medical expert in certain circumstances including "[w]hen additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments."

The ALJ noted that Plaintiff's visual fields were poor but found that her visual acuity had not approached disability or legal blindness. Tr. 23. The ALJ also noted his belief that the visual field testing was in part subjective, particularly given Dr. Kappelman's opinion that the results were somewhat "artifactual." *Id*.

The question before the court is whether the ALJ's step 3 finding is supported by substantial evidence in the record. The record demonstrates that the SAMCs did not consider whether Plaintiff's visual impairments were medically equivalent to any section of the Listing of Impairments. The record also demonstrates that although the ALJ ordered a consultative examination, no physician or medical expert indicated an opinion regarding whether Plaintiff's visual impairments were medical equivalent in severity to any section of the Listing of Impairments. In his opinion the ALJ noted the restrictions contained in Dr. Kappelmann's report and incorporated restrictions into his RFC finding. Tr. 23. He ultimately found that the evidence of record did not indicate that Plaintiff's visual impairments included disabling loss of visual fields or legal blindness. *Id*. The ALJ weighed the evidence regarding Plaintiff's visual impairments in making this finding. "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). The opinion of the ALJ and the record indicate that the ALJ did not find that the additional medical evidence regarding Plaintiff's visual impairments may change the finding that such impairments were medically equivalent to any impairment in the Listing of Impairments. The issue of medical equivalence is one reserved to the Commissioner, and the ALJ did not violate SSR 96-6p or applicable regulations, nor did he err in finding at step 3 that Plaintiff's visual impairments were not medically equivalent to any section of the Listing of Impairments.

Plaintiff urges that this court adopt the reasoning of the Seventh Circuit in *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004), and require the ALJ to obtain an updated expert opinion on the issue of medical equivalence. This court, like other courts in the Fifth Circuit, declines to do so. *See Barnes v. Astrue*, 2008 U.S. Dist. LEXIS 103125 (S.D. Texas, December 22,

2008) (noting that the ALJ's decision not to obtain an updated medical opinion from a medical expert was discretionary, in accordance with SSR 96-6p). There was sufficient evidence in the record for the ALJ to make his step 3 determination. Moreover, having found no error, the court further finds no prejudice in the step 3 determination and no basis for remand on that issue.

**B.   Whether the ALJ erred in finding at step 4 that Plaintiff could return to her past relevant work as a certified nurse's aide.**

Plaintiff argues that the ALJ erred in finding that she could return to her past relevant work as a certified nurse's aide. Plaintiff argues that the ALJ's RFC finding, including a limitation to work demanding keen vision, does not reflect the limitations imposed by her visual impairments and that this finding does not allow for an appropriate comparison to the visual acuity required of her past relevant work either as it was actually performed or as it is generally performed.

The ALJ found that Plaintiff's had vision of 20/50 in one eye, had 20/100 in the other eye, and had restricted visual fields bilaterally. She could not perform any job requiring keen vision, driving, working at unprotected heights or around dangerous, moving machinery, or peripheral vision. Tr. 18.

There must be evidence in the record to support the ALJ's RFC determination. The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities. Social Security Ruling 96-5p (July 2, 1996) ("SSR 96-5p"). The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. Soc. Sec. Ruling 96-8p (July 2, 1996) ("SSR 96-8p") (emphasis in original). The ALJ is responsible for determining a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making the RFC assessment and in determining the limitations imposed

by a claimant's impairment(s), the ALJ is instructed to consider the entire record. SSR 96-8p. As noted in SSR 96-8p,

> RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the most.

Plaintiff argues that the RFC finding fails to incorporate the limitations imposed by her visual impairments.

The ALJ is not required to incorporate limitations into the hypothetical questions presented to the vocational expert ("VE") or into the RFC finding that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). Plaintiff argues that the RFC finding is not consistent with the report of Dr. Kappelmann, the consultative examiner. Plaintiff argues that the opinion of Dr. Kappelmann implies that Plaintiff may not be able to see well enough to read. Dr. Kappelmann indicated that "with proper care, [Plaintiff] might be able to read." Tr. 257. His opinion indicated very specific limitations imposed by Plaintiff's visual impairments – that she "should not drive or work at jobs where she could hurt herself or others such as working with tools or working at heights." *Id*. The ALJ incorporated limitations into his RFC finding which reflect Dr. Kappelmann's opinion. Dr. Kappelman did not indicate that Plaintiff could not read. He did indicate that Plaintiff should not work at jobs where she could hurt herself or others, "such as working with tools." Tr. 257. The ALJ's indication that Plaintiff should not work around dangerous machinery does not constitute a rejection of Dr. Kappelmann's opinion without explanation, as characterized by Plaintiff.

Dr. Kappelman's reports indicate that Plaintiff complained of blurred distance vision and further indicate that Plaintiff took off her glasses for her near vision. Tr. 260. Plaintiff correctly notes that the ALJ did not find limitations on near acuity and did not incorporate any limitations into his RFC determination specifically dealing with near acuity. The ALJ did not find that Plaintiff could not work at jobs which required "keen vision." The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse*, 925 F.2d at 790. The ALJ indicated in his opinion that he had considered the evidence of record as to Plaintiff's visual impairments. Tr. 22-23. While he did not incorporate any limitation specifically on near visual acuity into his RFC determination, the limitations incorporated into the RFC finding are supported by substantial evidence in the record.

The ALJ also noted that although the *Dictionary of Occupational Titles* ("DOT") indicates that Plaintiff's previous relevant work as a certified nurse's aide, as generally performed in the economy, involves near visual acuity frequently, the DOT did not indicate that "keen vision" was required. Tr. 24.

Plaintiff argues that the ALJ erred by failing to adequately develop the record regarding the demands of her past relevant work as she actually performed it, specifically regarding the visual acuity demands of such work. Plaintiff notes that the ALJ did not elicit testimony from Plaintiff regarding the visual demands of her work, nor did he seek testimony from Plaintiff's former place of employment, not did he consult with a VE regarding the visual demands of Plaintiff's past relevant work. Whether a VE will be called in a particular case is in the ALJ's discretion. *Jones*

-11-

*v. Heckler*, 702 F.2d 616, 622 (5th Cir. 1983).  "Vocational testimony is not necessary if the administrative law judge concludes that a claimant could return to his former occupation." *Williams v. Califano*, 590 F.2d 1332, 1334 (5th Cir. 1979).  When an ALJ finds that a claimant is capable of performing his past relevant work, the lack of expert testimony becomes irrelevant.  *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989).  Since the ALJ found in this case that Plaintiff could perform her past relevant work, he did not err by failing to call a VE.

SSR 82-62 provides that the ALJ should make "[a] finding of fact as to the physical and mental demands of the past job/occupation" of the clamant.  Plaintiff claims that the ALJ erred by failing to make such required findings regarding the functional demands of Plaintiff's past work that were implicated by Plaintiff's impairments and by failing to perform the analysis directed by SSR 82-62.

Defendant correctly notes that the ALJ relied in part on Plaintiff's own descriptions of her past job duties. Tr. 24, 117-18.  In many cases an ALJ may refer to and rely on the function-by-function assessments made by SAMCs regarding a claimant's exertional limitations in determining claimant's RFC.  Such reliance has been approved by the Fifth Circuit in lieu of requiring an ALJ to engage in an explicit function-by-function analysis in his decision. *Onishea v. Barnhart,* 116 Fed. Appx. 1, 2004 WL 1588294 (5th Cir. July 16, 2004).   However, in this case the issue of Plaintiff's visual impairments was not considered by the SAMCs.  In describing her work, Plaintiff indicates that she did not use machines, tools, or equipment and did not complete any reports, although she did cook and clean and assisted nurses in carrying patients, usually from the bed to a wheelchair. Tr. 117-18.  Plaintiff was not questioned about the visual requirements of her previous work.  She testified that she "can't see," that she could see in a particular way "a little bit," but that she could not see out to the side.  Tr. 327.  Dr. Kapplemann indicated that Plaintiff could perform "most

activities," including walking, standing, and lifting. Tr. 257. However, there is no evidence in the record regarding whether Plaintiff's visual impairments affected her ability to cook, clean, or to assist nurses in moving patients. There is no opinion by the SAMCs on this issue, nor is there VE testimony, nor was this issue addressed in Plaintiff's testimony. The ALJ found that Plaintiff could perform her past relevant work as it was actually performed. At step 4 the Plaintiff had the burden of proof to show that she was unable to do her past relevant work. *Hollis v. Bowen,* 837 F.2d 1378, 1386 (5th Cir. 1988). Given the lack of evidence in the record regarding the visual demands of Plaintiff's past relevant work, the ALJ's determination that she could perform such work despite the limitations imposed by her visual impairments is not supported by substantial evidence and is in error.

Even assuming that the ALJ failed to appropriately determine the physical demands of Plaintiff's past relevant work, particularly the visual demands of such work, thereby violating SSR 82-62, remand is not necessarily required. Social Security Rulings are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration." 20 C.F.R. § 422.408 (1980); *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Hall v. Schweiker*, 660 F.2d 116, 119 n.4 (5th Cir. [Unit A] 1981) (*per curiam*). An agency must follow its own procedures, even if those procedures are more rigorous than what would otherwise be required. *Newton*, 209 F.3d at 459. Should the agency violate its internal rules and prejudice results, the proceedings are tainted and any action taken cannot stand. *Hall*, 660 F.2d at 119. However, rulings lack force of law and are not binding on courts. *Id.* Thus, the ALJ's violation of SSR 82-62 does not ipso facto mean that the Commissioner's decision must be reversed; rather, the claimant must demonstrate that he was prejudiced by the error. *Id.* The appropriate question is thus whether such failure is prejudicial.

The court finds that the ALJ's failure to appropriately determine the physical demands of Plaintiff's past relevant work, particularly the visual demands of such work, is prejudicial because there is no evidence of record regarding the effect that Plaintiff's visual impairments and limitations would have on her ability to perform her past relevant work as she actually performed it. The ALJ noted in his decision that the DOT provides that the Plaintiff's past relevant work as generally performed frequently involves near visual acuity. The ALJ's determination that such past work does not require "keen" vision is not helpful in determining whether Plaintiff's visual impairments and resulting limitations affected her ability to perform her past relevant work because "keen" vision and the requirement for such vision is not defined in either the medical records regarding the limitations imposed or through vocational or other expert testimony regarding the requirements of Plaintiff's past relevant work.

The court finds that the ALJ's step 4 finding is not supported by substantial evidence in the record, finds that the ALJ's failure to appropriately determine the visual demands of Plaintiff's past relevant work is prejudicial, and recommends that the decision of the Commissioner be reversed and that this case be remanded for additional administrative proceedings.

## IV.   CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States district judge reverse the Commissioner's decision and remand this case for additional administrative proceedings. Upon remand, the Commissioner should further consider the limitations imposed by Plaintiff's visual impairments, the extent to which such limitations affect Plaintiff's RFC, and the visual demands of Plaintiff's past relevant work, either as she actually performed it or as such work is generally performed.

Plaintiff having refused consent to having the United States Magistrate Judge conduct all further proceedings in this case, this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.

DATED this 13th day of August, 2009.

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**